IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

T-MOBILE NORTHEAST LLC, successor in interest
to OMNIPOINT COMMUNICATIONS CAP
OPERATIONS LLC,
4 Sylvan Way
Parsippany, New Jersey 07054

     Plaintiff,

  vs.

DISTRICT OF COLUMBIA HOUSING
AUTHORITY,
1133 North Capitol Street, N.E., Suite 200
Washington, D.C. 20002

 Serve on: Hans Froelicher, Acting General Counsel
     District of Columbia Housing Authority
     1133 North Capitol Street, N.E., Suite 210
     Washington, D.C. 20002

     Mayor of the District of Columbia
     1350 Pennsylvania Avenue, N.W.
     Washington, D.C. 20005

     Office of the Attorney General
      of the District of Columbia
     441 4th Street, N.W.
     Washington, D.C. 20001

     Defendant.

Case No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, T-MOBILE NORTHEAST LLC, successor in interest to OMNIPOINT

COMMUNICATIONS CAP OPERATIONS LLC ("T-Mobile"), for its Complaint for

Declaratory and Injunctive Relief against Defendant, District of Columbia Housing Authority

("DCHA"), alleges as follows:

367158 v 1

## NATURE OF ACTION

1.      On August 17, 1995, DCHA, as licensor, and American PCS, LP, as licensee, entered into a license agreement (the "License Agreement") covering commercial property owned or controlled by DCHA at 1229 G Street, S.E., Washington D.C. (the "Property"). A true copy of the License Agreement is attached hereto as Exhibit 1.

2.      Thereafter, on or about December 29, 1999, the License Agreement was assigned by American PCS to Omnipoint Communications Cap Operations LLC, the predecessor in interest to T-Mobile Northeast LLC. A true copy of the Assignment is attached hereto as Exhibit 2.

3.      By agreement dated December 13, 1999, the DCHA gave its express, written consent to the assignment. A true copy of the consent to assignment is attached hereto as Exhibit 3.

4.      The License Agreement gives T-Mobile, as assignee, the right to use and access to portions of the Property for the installation, maintenance, repair and replacement of telecommunications related equipment and associated antenna equipment ("Telecommunications Equipment") to provide cellular phone service to its customers.

5.      The License Agreement grants T-Mobile the right to access the Property 24 hours-a-day, seven days-a-week and such access is to remain unimpeded throughout the initial and renewal terms of the License Agreement. (Ex. 1, ¶ 9(d)).

6.      Despite such unlimited rights of access, DCHA recently has advised T-Mobile that it may not have access to its Telecommunications Equipment at the Property for one reason: T-Mobile allegedly owes the DCHA monies for past due electric charges.

7.    DCHA has stated that over $140,000 is due for charges going back to the mid-1990s. Such a demand is unreasonable, as it has no legitimate basis in fact or law. For example, the demand seeks monies that pre-date the period when T-Mobile acquired the site in late 1999, yet the consent to assignment that DCHA signed in late 1999 allowing T-Mobile to take over the site states that T-Mobile is *not* responsible for obligations accruing before the assignment.

8.    T-Mobile agrees that there is a dispute and that some monies are owed. But T-Mobile strongly disagrees with the amount claimed due and for what period.

9.    In good faith, T-Mobile tendered payment of $23,512 to resolve the dispute for all electric charges, based upon invoices received for other similar sites in the District of Columbia. DCHA has refused to accept it. Instead, DCHA has demanded over $140,000 and blocked T-Mobile's access to its equipment, thereby forcing T-Mobile into paying significant sums of money that are not due.

10.    By reason of DCHA's actions, T-Mobile is unable to obtain access to its Telecommunications Equipment, now malfunctioning, which in turn diminishes the ability to transmit radio signals in and around the site. This jeopardizes not only customer satisfaction, but imperils the one hundred plus emergency 911 calls transmitted each month at this site. As a result, DCHA's actions have the potential effect of endangering members of the public in need of such emergency cellular communications.

11.    T-Mobile therefore seeks declaratory relief, damages, an injunction, and specific performance under the License Agreement, compelling DCHA to grant T-Mobile immediate access to the Property for purposes of inspecting, repairing, maintaining and upgrading its Telecommunications Equipment at the Property.

## PARTIES

12.     T-Mobile is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 4 Sylvan Way, Parsippany, New Jersey 07054.

13.     Upon information and belief, DCHA is a public agency operated by the District of Columbia, having an address at 1133 North Capital Street, N.E., Suite 200, Washington, D.C. 20002.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15.     Venue is proper pursuant to 28 U.S.C. § 1391, in that a substantial part of the events giving rise to the claims at issue occurred in this District and DCHA resides in this District.

## THE TERMS OF THE LICENSE AGREEMENT

16.     The initial License Agreement term, beginning in 1995, was five years.  (Ex. 1, ¶ 4).  The term renews automatically for three successive five-year renewal periods.  (Id.)

17.     Paragraphs 1(b) and 2 of the License Agreement expressly grant T-Mobile the right to use the Property for "the installation, maintenance, repair and replacement of requisite wires cables, conduits and pipes for the installation, operation and maintenance of the Equipment." (Id., ¶¶ 1(b), 2).

18.     Further, paragraph 9(a) of the License Agreement states that Licensee may complete all work necessary to prepare, maintain and alter portions of the Property for operation of the Telecommunications Equipment.  (Id., ¶ 9(a)).

19.    Further, paragraph 9(d) of the License Agreement states that DCHA:

> shall provide to Licensee, Licensee's employees, agents,
> independent contractors and subcontractors access over the
> property to the Premises twenty four (24) hours a day, seven (7)
> days a week, at no charge to Licensee.

(Id., ¶ 9(d)).

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

20.    Upon information and belief, DCHA has objected to T-Mobile's presence and has sought money beyond that to which it is entitled under the License Agreement.

21.    In or about 2007, Leslie Jackson, Esq., counsel for the DCHA, notified T-Mobile that DCHA objected to certain items, including installation of new equipment on the roof of the Property.  DCHA asserted that T-Mobile was a trespasser, and that to remain on the roof, T-Mobile "must negotiate a monthly fee for all equipment" over and above that which it is obligated to pay under the License Agreement.

22.    DCHA also objected to the amount of space that T-Mobile occupied on the roof of the Property.

23.    T-Mobile asserted that each contention made by DCHA was incorrect.  T-Mobile demonstrated in several letters that its Telecommunications Equipment was within the parameters set forth in the License Agreement and that it occupied the space authorized under the License Agreement.

24.    Ms. Jackson responded in or about late 2007 and said that a separate problem existed.  She referred to the provision in the License Agreement at paragraph 9(c) that required a separate electric meter to measure the consumption of electricity used by the Telecommunications Equipment carrier, such that the Licensee will pay the utility directly therefor.

25.     When T-Mobile gained access to the Property from its assignor-predecessor in December 1999, there was no electric meter in place. The parties at all times have operated under the assumption that electric charges would be absorbed by DCHA.

26.     DCHA could have (and should have) insisted upon placement of an electric meter within the five-year period before T-Mobile gained access to the Property in late 1999. It did not and, thereby, waived any right to demand as much more than ten (10) years after the License Agreement had been signed by DCHA and eight years after T-Mobile assumed the obligations thereunder.

27.     Notwithstanding the apparent waiver by DCHA, T-Mobile proceeded in good faith upon discovering the matter when raised by DCHA and offered, by letter dated February 1, 2008, to install a new electric meter and pay certain amounts to DCHA to resolve the dispute. T-Mobile also reminded DCHA of its obligation to not impede access to its equipment, as DCHA had unreasonably been doing by reason of its claim that monies were due for electric charges. T-Mobile further stated that technicians would be on site to install the meter in two weeks.

28.     Based upon hourly charges at other locations, T-Mobile subsequently offered to resolve the dispute by paying DCHA the sum of $23,512 for all past charges that might be due. A check was tendered to DCHA, but DCHA returned the check and refused to accept payment. DCHA has demanded more than $140,000.

29.     Upon information and belief, DCHA is demanding that T-Mobile pay DCHA for electric charges going back to 1995 when the License Agreement was first signed with T-Mobile's predecessor. Under the consent agreement signed by DCHA in December 1999, it was agreed that T-Mobile would not be responsible for any charges prior to the assignment.

30.     Although T-Mobile has repeatedly requested access, DCHA continues to deny access to T-Mobile because of the monetary dispute.

31.     By letter dated February 15, 2008, T-Mobile notified DCHA, *inter alia,* that access was urgently needed to maintain the Telecommunications Equipment and asserted that DCHA was in breach of the License Agreement by reason of DCHA's actions.

32.     Indeed, there are two grounds for T-Mobile to have immediate access: first, to repair antennae equipment that is malfunctioning and negatively affecting the immediate sector as required to transmit radio signals; and second, to upgrade the equipment to meet new digital advances in cellular technology. This upgrade is reasonable and necessary and is being implemented by T-Mobile across the country.

33.     This site is situated in a location where there is substantial emergency 911 traffic. Approximately 120 emergency calls each month are transmitted as a result of the Telecommunication Equipment at the site. By virtue of the malfunction in the sector that has recently developed, 911 service is impaired, the exact degree to which is currently unknown.

34.     By gaining access to the site, T-Mobile technicians can rectify, repair, and upgrade the Telecommunications Equipment and restore service to its optimum level for the benefit of T-Mobile's customers and the public at large.

35.     As a result of the foregoing, DCHA has interfered with and obstructed T-Mobile's express rights under the License Agreement. The denial of access prevents T-Mobile from repairing or maintaining its Telecommunications Equipment as expressly required.

36.     DCHA's actions have the effect of forcing T-Mobile to respond to monetary demands that are not authorized by the License Agreement, and have no validity under the facts or the law.

37.    DCHA's interference with T-Mobile's equipment and its use and access to the Property will cause irreparable injury, which will persist unless and until injunctive relief is granted.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

38.    Plaintiff repeats each and every allegation aforementioned as if set forth at length herein.

39.    T-Mobile, as successor in interest, and DCHA entered into a binding agreement in 1995, the terms of which are contained in the License Agreement.

40.    T-Mobile has substantially complied with all of its obligations under the parties' agreement.

41.    DCHA is in breach of its agreement by interfering with the operation of the Telecommunications Equipment, and denying T-Mobile access to the Property to repair, upgrade and operate the Telecommunications Equipment

42.    By reason of the foregoing, T-Mobile has been damaged and is entitled to consequential damages in an amount to be determined at trial, plus interest thereon.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment)

43.    Plaintiff repeats each and every allegation aforementioned as if set forth at length herein.

44.    T-Mobile has complied with its obligations under the License Agreement, and has incurred great expense in installing its equipment and securing its rights at the Property.

45. DCHA is not acting in good faith as required by its implied contractual obligations under the License Agreement but, rather, is attempting to use T-Mobile's alleged breach of the License Agreement as a pretext to demand money to which DCHA is not entitled.

46. There is an actual, ripe, and justiciable controversy among the parties.

47. As a result of the foregoing, T-Mobile respectfully requests a declaration of the parties' rights and obligations due and owing to each other under the License Agreement.

**WHEREFORE,** T-Mobile respectfully requests judgment against DCHA as follows:

(a) Injunctive relief as deemed just and proper, preliminarily and permanently enjoining DCHA, its agent, representatives, and employees, and all persons acting in concert with them, from interfering with the Telecommunications Equipment or T-Mobile's rights under the License Agreement, including access to, use of, and occupancy of the Property;

(b) Compelling DCHA to perform all obligations under the License Agreement;

(c) Awarding T-Mobile consequential damages in an exact amount to be determined at trial;

(d) Declaring the parties' rights and obligations due each other;

(e) Awarding T-Mobile all costs, attorneys' fees, disbursements, and expenses as authorized by law; and

(f) Granting T-Mobile such other and further relief as deemed just and proper.

Respectfully submitted,

Elizabeth Sarah Gere, D.C. Bar No. 186585
Prashant K. Khetan, D.C. Bar No. 477636
ROSS, DIXON & BELL, LLP
2001 K Street, NW
Washington, DC 20006-1040
Telephone: (202) 662-2000
Facsimile: (202) 662-2190

*Attorneys for Plaintiff*

## VERIFICATION

**JASON CAMPBELL,** being duly sworn, deposes and says:

1.    I am Development Manager for the Washington, D.C. market for T-Mobile USA, Inc. ("T-Mobile"), parent of Plaintiff in this action.

2.    I have read the foregoing complaint, personally know the contents thereof, and the same is true to my own knowledge, except those matters stated to be alleged on information and belief, and as to those matters I believe them to be true.

**I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON APRIL 18 , 2008.**

Jason Campbell

367158 v 1

11

EXHIBIT 1

WDC 030

## LICENSE AGREEMENT

This License Agreement ("License") is entered into this _13th_ day of _August_ 1995 by and between the District of Columbia Housing Authority, ("Licensor") and American PCS, L.P., a Delaware limited partnership, ("Licensee").

NOW THEREFORE, for good and valuable consideration, the parties hereto covenant and agree as follows:

1. **Premises.**

   (a) Licensor is the controller of the real property described in Exhibit A annexed hereto ("Property"). Licensor agrees to license to Licensee certain space within the Property depicted in Exhibit B annexed hereto ("Premises") for the purposes of installing, operating, maintaining, repairing and replacing the communications equipment described on Exhibit C annexed hereto ("Equipment").

   (b) Licensor also grants to Licensee a non-exclusive license over so much of the Property as is reasonably necessary for (i) access to the Premises by vehicle and foot and (ii) the installation, maintenance, and repair and replacement of requisite wires, cables, conduits and pipes for the installation, operation and maintenance of the Equipment.

   (c) Licensee shall take all necessary steps to ensure that Licensee's operations on the Premises do not interfere with the building tenants' peaceful and quiet enjoyment of the Property. Accordingly, Licensee shall abate any nuisance caused by Licensee's operations on the Premises within a reasonable time period, not to exceed thirty (30) days after verbal or written notification from Licensor.

2. **Use.** The Premises shall only be used by the Licensee for the installation, maintenance and operation of the Equipment which will form part of a personal communications service ("PCS") system licensed by the Federal Communications Commission ("FCC").

3. **Permits and Approvals.** Upon Licensee's request, Licensor agrees to use its best efforts to cooperate with Licensee in obtaining, at Licensee's sole expense, any licenses, permits and other approvals required by any federal, state or local authority for Licensee's use of the Premises and/or the installation and use of the Equipment ("Approvals").

4. **Term.** The initial term of the License shall be five years ("Initial Term"), commencing the earlier of the date Licensee begins alteration of the Premises or September 1, 1995 ("Commencement Date"), and shall automatically be renewed, without need of further documentation, for three (3) additional five-year terms ("Renewal Terms") unless Licensee provides Licensor notice of its intention not to renew at least ninety (90) days prior to the expiration of the Initial or then Renewal Term.

5. **Rent and Security Deposit.**

   (a) Monthly rental for the Premises shall be ONE THOUSAND DOLLARS ($1,000.00) for the Initial Term, paid to Licensor at its address set forth in the Notice Section hereof and shall not be inclusive of electricity. The first month's rent shall be paid on the Commencement Date and thereafter paid in advance on the first day of each month. For any Renewal Term, Licensee shall pay the then current rent plus a 15% increase over the preceding five-year term. Rent shall be prorated for any partial month at the beginning or end of the term of this License.

   (b) On the Commencement Date of this License, Licensee shall forward a security deposit to Licensor equal to THREE THOUSAND DOLLARS ($3,000.00) ("Security Deposit"), which amount shall be retained by Licensor in a non-interest bearing account as security for the faithful performance of all of the covenants, conditions, and agreements of this License. If Licensee defaults under this License, Licensor shall notify Licensee in writing within thirty (30) days of the alleged default of its intent to invade the Security Deposit. After notification, Licensee, its successors or assigns shall have thirty (30) days to cure the default. If the default is not cured within thirty (30) days, Licensor may use, apply or retain all or part of this Security Deposit to compensate Licensor for any loss or damage. The remainder of the Security Deposit, if any, shall be returned to Licensee without interest when the License is terminated.

6. **Compliance with Law.** Licensee shall install and operate the Equipment and use the Premises in a manner which shall comply with all federal, state, and local laws and regulations governing the installation, operation and use thereof.

7  Interference. Licensee shall install and operate the Equipment in a manner which shall not cause technical interference to Licensor nor other lessees or licensees with tenancies and rights to install telecommunications equipment pre-dating the execution date of this License. Beginning on the execution date of this License, Licensor shall not allow any other use of the Property which will cause interference with Licensee's use. In the event of such interference, Licensor will take all necessary action to ensure the party causing the interference takes appropriate action to correct and eliminate the interference.

8. Survey Period. After the execution date of this License and prior to the Commencement Date, Licensee shall have access to the Premises during business hours for the purpose of performing necessary engineering surveys, inspections and other reasonably necessary tests relating to Licensee's proposed use of the Premises. Licensee shall fully restore to its prior condition any portion of the Premises disturbed by Licensee.

9. Improvements, Liability, Utilities, Access.

(a) At Licensee's expense and with minimal disruption to Licensor, Licensee may install, operate and maintain the Equipment on the Premises. In connection therewith, Licensee may complete all work necessary to prepare, maintain and alter the Premises for operation of the Equipment. Notwithstanding its affixation to the Premises, the Equipment shall remain Licensee's personal property and Licensor waives any lien rights it may have concerning the Equipment. Licensee may remove, and/or replace all or part of the Equipment and substitute other equipment, all at its sole expense on or before the expiration or earlier termination of this License and shall make all necessary repairs to the Premises, wear and tear excepted, caused by such removal. An on-site inspection is to be performed by both parties within thirty (30) days of the termination of this License to determine any and all repairs.

(b) At Licensee's expense, and upon Licensor's approval, which approval shall not be unreasonably withheld, delayed or conditioned, Licensee may upgrade the present utilities, install new utilities on the Premises or bring utilities to the Premises, including but not limited to a standby power generator for Licensee's exclusive use.

(c) At Licensee's sole cost and expense, Licensee shall have a separate electric meter installed to measure the electric consumption of its Equipment and Licensee shall contract with and pay directly to the public utility company for the installation of the electric meter and for any electricity consumed by its Equipment.

(d) In accordance with Section 1(b) of this License, Licensor shall provide to Licensee, Licensee's employees, agents, independent contractors and subcontractors access over the Property to the Premises twenty-four (24) hours a day, seven (7) days a week, at no charge to Licensee.

(e) At Licensee's sole cost and expense, Licensee shall take immediate action to repair the Equipment on an emergency basis if the Equipment is damaged by a weather condition, other Act of Nature, or illegal acts of third parties.

10. Non-Disturbance. In the event the Property is encumbered by a mortgage as of the date of this License, the Licensor immediately after this License is executed, will request that the holder of each such mortgage execute a non-disturbance agreement, to be prepared by Licensee, and cooperate with Licensee toward such end to the extent that such cooperation does not cause Licensor additional financial liability or administrative expense.

11. Sale or Mortgage of Property. Should Licensor, at any time after the execution date of this License, decide to sell, mortgage or encumber all or any part of the Property, such transaction and its documentation shall be subject to this License and Licensee's rights hereunder.

12. Termination. This License may be terminated as follows:

(a) by either party, upon default of any covenant or term of this License by the other party, which default is not cured within thirty (30) days of receipt of written notice, provided that the cure period for any monetary default is ten (10) days from receipt of notice. During the continuance of any default after such notice and cure period, the non-defaulting party may terminate this License by giving notice of termination to the defaulting party, and the non-defaulting party may exercise any other remedies it may have under this License or at law;

(b) by Licensee, without further liability hereunder, upon providing ninety (90) days prior notice

(i)      if Licensee is unable to obtain or maintain any required or necessary Approvals; or

(ii)    if, due to changed circumstances, Licensee determines that for technological reasons, the Premises are no longer suitable for their intended purpose; or

(iii)    if Licensee determines that any of the Equipment cannot be used without interference from, or causing any undue interference to, other property or equipment in the area of the Property.

(c) by Licensee, without further liability hereunder, upon providing written notice to Licensor if the Premises or Equipment are destroyed or damaged and rendered unsuitable for normal use. In such event, all rights and obligations of the parties shall cease as of the date of the damage or destruction.

(d) by Licensor, without further liability hereunder, upon providing ninety (90) days prior notice, should Licensor decide to terminate this License for the convenience, or changed circumstances of Licensor.

(e) by Licensor, upon providing notice, should Licensee fail to comply with the health and safety regulations and laws issued by any United States agency or local agency having jurisdiction over the Property, and Licensee fails to cure such health and safety violation within the period of time prescribed by the applicable agency, regulation or law.

13. **Insurance.** Licensee shall procure and maintain a public liability policy, naming the District of Columbia Housing Authority as an additional insured, with limits of $1,000,000 for bodily injury, $1,000,000 for property damage, $2,000,000 aggregate. A certificate of insurance shall be furnished to Licensor prior to the installation of Equipment. Such policy shall provide that termination or cancellation will not occur without at least fifteen (15) days prior written notice to Licensor.

14. **Title, Authority and Quiet Enjoyment.** Licensor hereby represents and warrants that (i) it holds good and marketable title to the Property, (ii) it has full authority to enter into and execute this License, and (iii) provided Licensee has made rental payments as required hereunder, Licensee shall have quiet enjoyment of the Premises.

15. **Marking and Lighting Requirements.** Licensee accepts sole responsibility for the Property's compliance with building marking and lighting regulations promulgated by the Federal Aviation Administration ("FAA") or the Federal Communications Commission ("FCC"), as applicable, due to the installation of Licensee's antennas on the roof of the building.

16. **Notices.** All notices, requests, demands and other communications hereunder shall be in writing, except as specified under paragraph 1(c), and shall be deemed validly given if personally delivered or sent via overnight courier providing proof of service, or sent by certified mail, return receipt requested, as follows (or any other address that the party to be notified may designate by like notice to the sender):

If to Licensor:

District of Columbia Housing Authority
1133 North Capitol Street, N.E., Suite 200
Washington, D.C. 20002
Attention: General Counsel

If to Licensee:

American Personal Communications
One Democracy Center
6901 Rockledge Drive, Suite 600
Bethesda, MD 20817
Attention: Legal Counsel

17 **Assignment.** Licensee may, upon notice to Licensor assign this License or any interest herein to any corporation, partnership or other entity which (i) is controlled by, controlling or under common control with Licensee, or (ii) shall merge or consolidate with or into Licensee, or (iii) shall succeed to all or substantially all the assets, property and business of Licensee.

18. **Successors and Assigns.** This License shall run with the Property. Licensee shall have the right to submit this License, or a Memorandum of License which Licensor agrees to execute and acknowledge, for recordation to the appropriate governmental agency having jurisdiction over the Property. This License shall be binding upon and inure to the benefit of the parties, their respective successors and assigns.

19. **Indemnification.** Licensee shall exonerate, hold harmless, indemnify and defend Licensor from any and all claims, obligations, liabilities, costs, demands, damages, expenses, suits or causes of action, including costs and reasonable attorney's fees, which may arise out of any injury, death or damage arising out of or resulting from the negligent acts or omissions of Licensee or Licensee's principals, employees or agents directly relating to Licensee's use and operation, of the Equipment on the Premises.

20. **Miscellaneous.** This License constitutes the entire agreement between the parties and supersedes all prior written and verbal agreements, representations, promises or understandings between the parties hereto. Any amendments to this License must be in writing and executed by both parties. If any provision of this License is invalid or unenforceable with respect to any party, the remainder of this License or the application of such provision to persons other than those as to whom it is held invalid or unenforceable, shall not be affected and each provision of this License shall be valid and enforceable to the fullest extent permitted by law.

IN WITNESS WHEREOF, The parties hereto, consenting to be legally bound, have placed their hands and seals below as of the date set forth hereinabove.

LICENSOR:
DISTRICT OF COLUMBIA
HOUSING AUTHORITY

By _____
David Gilmore
Its: Receiver


LICENSEE:
AMERICAN PCS, L.P.

By: _____
W. Scott Schelle
Its: Chief Executive Officer

Exhibit A
Property

1.    The street address of the Property is: 1229 G Street, S.E., Washington, D.C. 20003.

2.    The Property is recorded in the land records of the District of Columbia.

      a. Lot No.         85

      b. Square No.    1020

Exhibit B
Premises

The Premises shall consist of the following:

1. Floor, rooftop, and/or penthouse space on the Property sufficient to accommodate the Equipment.



[An as-built drawing depicting the Premises shall replace this Exhibit]

Exhibit C
Equipment

1   The following Equipment together with any associated wires, cables, pipes, and conduits attached thereto and supporting structures associated therewith shall be located on the Premises.

| Approximate Quantity | Type | Approximate Size |
|---|---|---|
| 2 | Equipment Cabinet Housing Base Station | 52.5" width x 54" height x 20" depth |
| 6 | Panel Antennas | 7' height x 1' width |
| 2 | Communications Link Dishes | 24" diameter |

**EXHIBIT 2**

Location: WOC020

# ASSIGNMENT AND ASSUMPTION AGREEMENT

This Assignment and Assumption of Agreement (the "Assignment") is made as of the 24th day of December, 1999 (the "Effective Date") by and between **OMNIPOINT COMMUNICATIONS CAP OPERATIONS, LLC**, a Delaware limited liability company, having a principal place of business at 3 Bethesda Metro Center, Suite 400, Bethesda, Maryland 20814 ("Assignee") and **AMERICAN PCS, L.P.** , a Delaware limited partnership with offices at 4900 Main Street, Kansas City, MO 64112, **APC REALTY AND EQUIPMENT COMPANY, LLC**, a Delaware limited liability company with offices at 4900 Main Street, Kansas City, MO 64112, **AMERICAN PCS COMMUNICATIONS, LLC**, a Delaware limited liability company with offices at 4900 Main Street, Kansas City, MO 64112, and **APC PCS, LLC**, a Delaware limited liability company with offices at 4900 Main Street, Kansas City, MO 64112 (collectively, and each individually, "Assignor").

WHEREAS, pursuant to those certain leases, licenses or other agreements, copies of all of which are attached hereto as **Exhibit "A"** and incorporated herein by this reference (collectively, the **"Agreement"**), Assignor has leased, licensed or obtained rights to use and occupancy of, and access to, certain premises; and

WHEREAS, pursuant to that certain Asset Purchase Agreement dated as of December 22, 1999, Assignor has agreed to assign to Assignee, and Assignee has agreed to assume, all of the Assignor's right, title and interest in and to the Agreement.

NOW, THEREFORE, in consideration of the above recitals, the mutual promises and covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor and Assignee hereby agree as follows:

1.    **Assignment.**  Effective as of the Effective Date, Assignor does hereby transfer, convey, set-over, grant and assign unto Assignee (a) all of Assignor's right, title and interest in and to the Agreement and the premises covered thereby, and all rights of access thereto benefiting Assignor (the "Premises") for the remaining term of the Agreement, (b) any security deposit given by Assignor to landlord, licensor or grantor under the Agreement ("Landlord"), and (c) any options which Assignor may have under the Agreement, including, without limitation, the right to extend or renew the Agreement, expansion rights for additional premises, or the right to purchase the Premises.

2.    **Acceptance of Assignment and Assumption.**  Assignee hereby accepts the aforesaid assignment of Assignor's right, title and interest in and to the Agreement and the Premises for the remaining term of the Agreement, as of the Effective Date, and Assignee hereby expressly assumes and agrees to be bound by and timely perform each of the

obligations and duties of Assignor under the Agreement accruing from and after the Effective Date.

    3.    **Representations of Assignor.** Assignor hereby warrants and represents to Assignee the following:

        a.     Attached hereto as **Exhibit "A"** is a true and correct copy of all documents comprising the Agreement in Assignor's possession or control.

        b.     Assignor has valid, marketable and insurable (at regular rates) leasehold and/or other property interests under the Agreement, and the rights of access to the Premises as set forth herein, free and clear of all Liens other than Permitted Liens (as those terms are defined in **Exhibit "B"** attached hereto);

        c.     Assignor has full right, power and authority to enter into this Assignment and to grant to Assignee the rights set forth in this Assignment;

        d.     Assignor enjoys peaceful and undisturbed possession of the Premises under the Agreement;

        e.     the Agreement is in full force and effect and Assignor has fulfilled all of its obligations, covenants and warranties thereunder;

        f.     this Assignment does not violate the provisions of any agreement or restrictive covenant (A) under which Assignor is bound or governed, or (B) which restricts Assignor in any way with respect to the use or disposition of the Premises or any portion thereof, or (C) to Assignor's knowledge under which the Premises is bound or governed;

        g.     Assignor has obtained all necessary consents and approvals required under the Agreement or otherwise to permit Assignor to enter into this Assignment;

        h.     to Assignor's knowledge there exists no default under the Agreement; and

        i.     prior to the Effective Date, Assignor has paid all base rent and other fees or charges provided for in the Agreement when and as due under the Agreement and has not prepaid rent or other fees beyond the time periods set forth in the Agreement for regular periodic payments of rent or such other fees.

    4.    **Representation of Assignee.** Assignee hereby represents and warrants to Assignor that Assignee has full right, power and authority to enter into this Assignment.

5. **Limitation on Liability.**

a. Assignor shall be responsible for damages arising from any breach of its warranty and representation covenant regarding the insurability of the leasehold or other property interest in and to the Premises only if all of the following occur: (x) Assignee seeks insurance prior June 30, 2001, for such interest in connection with obtaining financing, and (y) Assignee is unable to secure such insurance, and (z) Assignee's right to continued use and occupancy of the Premises is materially interfered with or impaired by the defect causing the Premises to be uninsurable; provided, however, that if, prior to June 30, 2001, Assignee seeks to insure such interest in connection with obtaining financing, but the condition of title causes the premium required to obtain insurance to exceed the regular, commercially reasonable rate for insurance (taking into account the then remaining term of the Agreement, including renewal options), Assignor shall be liable for payment of the difference between the total premium to insure and such regular, commercially reasonable rate.

b. By signing this Assignment, Assignee represents and warrants to Assignor as follows: (i) Assignee has full right, power and authority to enter into this Assignment; (ii) Assignee has not caused a title search to be performed with respect to the Premises; and (iii) except for those matters provided for in (i) through (iii) of the following sentence, Assignee has no knowledge of any matter that would cause the representations and warranties of Assignor set forth in this Assignment to be false or misleading. Assignee agrees that, on the date of this Assignment, Assignee takes its leasehold interest subject to (i) the express provisions of the Agreement and (ii) the Permitted Liens and (iii) any matters which would cause the representations and warranties of Assignor set forth in this Assignment above to be false or misleading and of which Assignee has actual knowledge prior to the Effective Date, whether disclosed to Assignee in writing by Assignor or otherwise.

6. **Indemnification.**

a. Except with respect to Claims based upon fraud or intentional misrepresentation, all representations and warranties under this Assignment shall expire on June 30, 2001, and no Claim for indemnification with respect thereto may be asserted after such date.

b. Assignee agrees to defend, indemnify and save Assignor harmless from all claims, damages, liabilities, costs and expenses (including reasonable attorneys' fees, costs and expenses) arising (a) under the Agreement and relating to the period of time from and after the Effective Date, or (b) from any breach of this Assignment or the Agreement (including as a result of holding over following expiration or termination thereof) by Assignee, or (c) due to any act or omission of Assignee or Assignee's agents, employees, contractors, invitees or licensees occurring on or in relation to the Premises.

c. Subject to the provisions of Sections 6(a) and (b), Assignor agrees to defend, indemnify and save Assignee harmless from all claims, damages, liabilities, costs and

expenses (including reasonable attorneys' fees, costs or expenses) arising (a) under the Agreement and relating to the period of time prior to the Effective Date, or (b) from any breach of this Assignment or the Agreement by Assignor, or (c) any act or omission of Assignor or Assignor's agents, employees, contractors, invitees or licensees occurring on or in relation to the Property.

       d.    Except with respect to Claims based upon fraud or intentional misrepresentation, neither Assignee nor Assignor, nor their respective officers, members, managers, directors, agents, representatives, affiliates and employees shall be liable for any indirect, consequential, special, exemplary or punitive damages or lost profits or revenues of any nature whatsoever arising out of or related to actions or omissions of Assignor or Assignee in connection with this Assignment.

       e.    The provisions of this Section 6 shall survive the expiration or termination of this Assignment.

    7.    **Utilities.**

       a.    If any electrical, telephone or other utility systems, the grounding system, the antenna support platform or microwave equipment and service serves both the Premises and adjacent facilities of Assignor, the parties hereby grant each other the nonexclusive right and easement for use of such shared systems and equipment in common with each other. The parties shall share such common systems, platforms, equipment and service in a manner that keeps Assignee's facility and all other facilities utilizing such systems, platforms, equipment and service in continuous commercial operation, and shall share all common system, platform, equipment and service costs equally, either party shall have the right to require submetering of utility systems, the cost of installation of such submeters to be split equally between the parties. Assignor shall bear the cost of the microwave equipment and service). Assignee shall use commercially reasonable efforts to obtain and have installed separate electrical, telephone and other utility systems and service for the Premises directly from the servicing utility company within twelve (12) months after the date of this Assignment. Such utility systems and service may include the installation of a separate meter and main breaker, where required (with Assignor providing reasonable cooperation), at Assignee's expense. If any such electrical, telephone or other utility service is not available on commercially reasonable terms (for example, if such services are provided by a third party who is unwilling to provide separate facilities, or where no there is no physical space to run a second set of facilities) the parties shall continue to share such electrical, telephone or other utility systems in accordance with this Section 7. The rights granted to Assignee under this Section 7 with respect to shared microwave equipment and service shall expire upon the earlier of (i) the date of installation of substitute equipment and service by Assignee and (ii) March 30, 2000.

       b.    Assignee shall be responsible for maintaining any systems, platforms and microwave equipment which serve only the Premises, in good operating condition and repair, and in compliance with all applicable laws and regulations and industry standards. Assignor

shall be responsible for maintaining all shared systems, platforms and microwave equipment in good operating condition and repair, and in compliance with all applicable laws and regulations and industry standards, and Assignee shall reimburse Assignor for 55% of the actual commercially reasonable costs incurred by Assignor in connection therewith within fifteen (15) days after Assignor provides Assignee an invoice and reasonable supporting documentation of such costs.

        c.    If either party desires to upgrade or improve any shared utility systems or equipment or platforms, the party desiring such action shall notify the other in writing. The notice shall set forth in reasonable detail the desired upgrades or improvements and the estimated costs and benefits of such upgrades or improvements. The nonrequesting party shall notify the requesting party within fifteen (15) business days after receipt of a request notice if, in the nonrequesting party's reasonable good faith judgment, the desired action is likely to (i) have a material adverse impact on the nonrequesting party's operations on the Premises, or (ii) increase the nonrequesting party's costs with respect to its facilities, or its performance obligations under the Agreement, any other agreement with a Landlord, or this Assignment. If the nonrequesting party sends such notice, the requested upgrade or improvement shall not be pursued; provided, that, with respect to clause (ii), the request shall be deemed approved if the requesting party agrees in writing to assume all increased costs and performance obligations that would be otherwise imposed on the nonrequesting party as a result of the requested upgrades or improvements. In all other instances, the requesting party may pursue its upgrades or improvements after the expiration of the response period at the requesting party's sole cost and expense.

      8.    **Notices from Landlord.** In the event that Assignor shall receive, on or after the Effective Date, any notice or other correspondence from the Landlord concerning the Premises or the Agreement, Assignor shall promptly forward such notice or other correspondence to Assignee. In the event that Assignee shall receive, on or after the Effective Date, any notice or other correspondence from the Landlord alleging a default under the Agreement, Assignee shall promptly forward a copy of such notice or other correspondence to Assignor, unless Landlord shall have released Assignor from liability under the Agreement in connection with this Assignment, in which event Assignee shall not be required to forward such copy.

      9.    **Notices.** All notices, elections, offers, acceptances, consents and other communications permitted or required to be made under this Assignment shall be in writing and shall be hand delivered or sent by express courier service, cost prepaid, or by facsimile to the following addresses:

Assignee: Omnipoint Communications
     Cap Operations LLC
     6901 Rockledge Drive – 9th Floor
     Bethesda, MD  20817
     Attention: Market Director
     Fax:  (301) 530-6627

with copy to: Omnipoint Communications
     16 Wing Drive
     Cedar Knolls, NJ  07927
     Attention:  Senior Director, Legal and Regulatory
     Fax:  (973) 290-2445

Assignor: Sprint PCS
     6905 Rockledge Drive
     Bethesda, MD  20817
     Attention:  Leasing Manager
     Fax:  (301) 571-4039

with copy to: Sprint Spectrum L.P.
     4900 Main Street
     Kansas City, MO  64112
     Attention:  Business Law Department
     Fax:  (816) 559-2281

or to such other Person(s), telex or facsimile number(s) or address(es) as the party to receive any such communication or notice may have designated by written notice to the other party. Any notice delivered by a facsimile or similar means shall be confirmed by a hard copy delivered as soon as practicable thereafter. The effective date of any notice shall be (i) the date of the addressee's receipt, if delivered by hand or express courier on a business day or, if not, the date of the first business day after receipt; or (ii) the date of receipt if received by 5:00 p.m. local time on a business day or, if not, the first business day after receipt, if sent by facsimile.

  10. **Successors.** This Assignment shall be binding upon and shall inure to the benefit of the parties hereto and their successors, assigns and transferees in title.

  11. **Counterparts.** This Assignment may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, binding upon all of the parties. Original signatures transmitted via facsimile shall be acceptable for purposes of executing this Assignment. If counterpart originals are executed and/or original signatures are transmitted by facsimile, the parties hereto shall endeavor in good faith to deliver to each other executed originals within ten (10) days of execution.

482490.18 12/22/99             6

12.     **Governing Law.** This Assignment shall be construed and enforced in accordance with and governed by the laws of the state in which the Premises is located.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have caused this Assignment to be executed as of the day and year first above written.

OMNIPOINT COMMUNICATIONS CAP OPERATIONS, LLC

By: _____

Mark Caron

AMERICAN PCS, L.P.

By:    Sprint Spectrum Holding Company, L.P., its General Partner

By: _____

William Tongue
Authorized Representative

APC REALTY AND EQUIPMENT COMPANY, LLC

By:    American PCS Communications, LLC, a Member

By: _____

William Tongue
Authorized Representative

AMERICAN PCS COMMUNICATIONS, LLC

By:    American PCS, L.P., a Member

By: _____

William Tongue
Authorized Representative

APC PCS, LLC

By:    American PCS Communications, LLC, a Member

By: _____

William Tongue
Authorized Representative

SIGNATURE PAGE (1 OF 1) OF
THE ASSIGNMENT AND ASSUMPTION AGREEMENT

IN WITNESS WHEREOF, the parties hereto have caused this Assignment to be executed as of the day and year first above written.

OMNIPOINT COMMUNICATIONS CAP OPERATIONS, LLC

By: _____
    Mark Caron

AMERICAN PCS, L.P.

By:    Sprint Spectrum Holding Company, L.P., its
       General Partner

       By:    _____
              William Tongue
              Authorized Representative

APC REALTY AND EQUIPMENT COMPANY, LLC

By:    American PCS Communications, LLC, a Member

       By:    _____
              William Tongue
              Authorized Representative

AMERICAN PCS COMMUNICATIONS, LLC

By:    American PCS, L.P., a Member

       By:    _____
              William Tongue
              Authorized Representative

APC PCS, LLC

By:    American PCS Communications, LLC, a Member

       By:    _____
              William Tongue
              Authorized Representative

SIGNATURE PAGE (1 OF 1) OF
THE ASSIGNMENT AND ASSUMPTION AGREEMENT

**EXHIBIT 3**

Location: WDC020 DC03XG074

## CONSENT TO ASSIGNMENT

#### Background

A.    APC Realty and Equipment Company, LLC ("APC"), a Delaware limited liability company with offices at 6905 Rockledge Drive, Bethesda, Maryland 20817, has leased a certain property at 1229 G Street, S.E., Washington, DC (the "Premises") pursuant to a lease agreement on August 17, 1995 as amended (the "Lease"), by and between District of Columbia Housing Authority ("Landlord") and APC, as tenant.

B.    APC desires to assign to Omnipoint Communication Cap Operations, LLC ("Omnipoint CapOps" or "Lessee"), a Delaware limited liability company with offices at 3 Bethesda Metro Center, Suite 400 Bethesda, Maryland 20814, and Omnipoint CapOps has agreed to assume, the Lease.

C.    The Lease requires Landlord's consent to an assignment of the Lease to Omnipoint CapOps.

NOW, THEREFORE, Landlord, intending to be legally bound, and for good and valuable consideration receipt of which is acknowledged, agrees as follows:

1.    Landlord hereby consents to the transfer and assignment by APC to Omnipoint CapOps of the Lease, subject to the following conditions:

a.    APC shall transfer and assign to Omnipoint CapOps, and Omnipoint CapOps shall accept and assume, all of the rights, interests, duties, obligations and liabilities of APC under the Lease arising on or after the effective date of the consummation of such transfer and assignment (the "Transfer Date"); and

b.    APC and Omnipoint CapOps shall deliver to Landlord written notice of the Transfer Date.

2.    Upon the transfer, assignment and assumption of the Lease as set forth above, APC shall be released from all obligations under the Lease arising on or after the Transfer Date, and Omnipoint CapOps shall be responsible for all such obligations; provided, however, that nothing contained herein shall be construed to release APC from, nor to impose upon Omnipoint CapOps liability for, any obligations under the Lease which have arisen or may arise prior to the Transfer Date.

3.    Omnipoint CapOps may, from time to time, desire to collaterally assign to a holder of its indebtedness ("Lender") a security interest in and to the Lease and/or assets of Omnipoint CapOps located on the Premises (the "Site Assets"). Notwithstanding anything in the

481941 2 11/5/99

ʰy (a) consents to such collateral assignment and the
from time to time to Lender, whether now or hereafter
ᴅd Lessee's right, title and interest in, to and under the Lease;
ᴛo the Premises to enable Lender to inspect and to remove any
ᴠeen granted a security interest by Lessee upon default by Lessee
granted in favor of Lender, and (c) agrees to recognize Lender as
ᴀ the written election of Lender.

ᴛanding anything in the Lease to the contrary, the Lease shall be not be
to any mortgage, ground lease or other encumbrance placed upon the
the Transfer Date, unless the holder of such mortgage, ground lease or other
ᴅ deliver to Lessee a subordination, nondisturbance and attornment agreement
ᴊly satisfactory to Lessee.

Except as expressly modified herein, the Lease has not been amended and remains
e and effect and APC has fulfilled all of its obligations, covenants and warranties
Lease and is not in default in any manner thereunder.

6.    Recognizing that the parties will act in reliance hereon, Landlord represents and
ᴛants to APC and Omnipoint CapOps that it is authorized to execute and deliver this
ᴊstrument without consent of any other party, or that all necessary consents have been obtained.

IN WITNESS WHEREOF, the Landlord has caused this instrument to be signed by its
duly authorized representatives on the date written below.

LANDLORD:
DISTRICT OF COLUMBIA HOUSING
AUTHORITY
By: _Lisa Blacknall_
Name: _Lisa Blacknall_
Title: _Contracting Officer_
Date: _12/13/99_

08-689
D
RMC

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

## I.(a) PLAINTIFFS

T-MOBILE NORTHEAST LLC, successor in interest to
OMNIPOINT COMMUNICATIONS CAP OPERATIONS LLC

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____88888_____
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Elizabeth Sarah Gere
ROSS, DIXON & BELL, LLP
2001 K Street, NW
Washington, DC 20006-1040
(202) 662-2000

## DEFENDANTS

DISTRICT OF COLUMBIA HOUSING AUTHORITY

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____11001_____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

Case: 1:08-cv-00689
Assigned To : Collyer, Rosemary M.
Assign. Date : 4/22/2008
Description: TRO/PI

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ◉ 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ◉ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ◉ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**◉ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)      OR      ○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

YB

3

| ○ G. Habeas Corpus/ 2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☒ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

breach of license agreement and declaratory judgment seeking parties' rights under agreement  *28 U.S.C. § 1332*

| VII. REQUESTED IN COMPLAINT | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | DEMAND $ ⌐ TBD ¬ JURY DEMAND: | Check YES only if demanded in complaint YES ☐ NO ☒ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE  April 22, 2008    SIGNATURE OF ATTORNEY OF RECORD  *[signature]*

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.