IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

T-MOBILE NORTHEAST LLC, successor in interest
to OMNIPOINT COMMUNICATIONS CAP
OPERATIONS LLC,

            Plaintiff,

        vs.                                         Case No. _____

DISTRICT OF COLUMBIA HOUSING
AUTHORITY,

            Defendant.

## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65(b), Plaintiff hereby moves for entry of a temporary restraining order, compelling Defendant to grant Plaintiff immediate access to property located at 1229 G Street, S.E., Washington D.C. for purposes of inspecting, repairing, maintaining and upgrading its telecommunications equipment. Plaintiff further moves, pursuant to Fed. R. Civ. P. 65(a), that upon expiration of the temporary restraining order, the Court enter a preliminary injunction extending Plaintiff's access to the property until final disposition of this litigation. The grounds upon which this motion is based are fully set forth in the attached memorandum and affidavit.

Dated: April 22, 2008

Respectfully submitted,

Elizabeth Sarah Gere, D.C. Bar No. 186585
Prashant K. Khetan, D.C. Bar No. 477636
ROSS, DIXON & BELL, LLP
2001 K Street, NW
Washington, DC 20006-1040
Telephone: (202) 662-2000
Facsimile: (202) 662-2190

*Attorneys for Plaintiff*

367193 v 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| T-MOBILE NORTHEAST LLC, successor in interest to OMNIPOINT COMMUNICATIONS CAP OPERATIONS LLC,<br><br>       Plaintiff,<br><br>   vs.<br><br>DISTRICT OF COLUMBIA HOUSING AUTHORITY,<br><br>       Defendant. | Case No. _____ |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION
## AND TEMPORARY RESTRAINING ORDER

### INTRODUCTION

Since December 1999, Plaintiff, T-Mobile Northeast LLC, successor in interest to Omnipoint Communications Cap Operations LLC ("T-Mobile"), and Defendant, District of Columbia Housing Authority ("DCHA"), have been bound by a license agreement (the "License Agreement"), which gives T-Mobile the right to use and access portions of property owned or controlled by DCHA in Southeast Washington D.C. (the "Property"), adjacent to Pennsylvania Avenue between the Eastern Market and Potomac Avenue Metro stations. The License Agreement allows T-Mobile twenty four hour a day, seven day a week access to the Property to install, maintain, repair and replace telecommunications related equipment that provides cellular phone service. Despite the unconditioned right of access provided under the License Agreement, DCHA recently advised T-Mobile that it would not allow T-Mobile access to its telecommunications equipment at the Property until T-Mobile paid allegedly past due electric

charges. Despite T-Mobile's reasonable good faith efforts to resolve this separate and unrelated monetary dispute, DCHA has continued to prevent T-Mobile's access to the Property. As a result of being unable to access and repair its telecommunications equipment at the Property, during the weekend of April 19 and 20, 2008, T-Mobile received an alarm warning that two of its transmitters have malfunctioned, which, in turn, has significantly diminished the ability to transmit radio signals in and around the site. Among other effects, DCHA's actions imperil the more than one hundred emergency 911 calls transmitted each month at this site, thus jeopardizing public safety. As demonstrated below, particularly in light of the public safety issue and the serious transmitter malfunctions over the weekend, T-Mobile is entitled to injunctive relief granting it immediate access to the Property for purposes of inspecting, repairing, maintaining and upgrading its telecommunications equipment pending the final disposition of this litigation.

## STATEMENT OF FACTS

On August 17, 1995, DCHA, as licensor, and American PCS, LP, as licensee, entered into the License Agreement covering commercial property owned or controlled by DCHA at 1229 G Street, S.E., Washington D.C. (Compl., Ex. 1).[1] The initial License Agreement term was for five years, but the term renews automatically for three successive five-year renewal periods. (Id., ¶ 4). Thereafter, on or about December 29, 1999, the License Agreement was assigned by American PCS to Omnipoint Communications Cap Operations LLC, the predecessor in interest to T-Mobile. (Compl., Ex. 2). By agreement dated December 13, 1999, DCHA gave its express, written consent to the assignment. (Id., Ex. 3).

---

[1] T-Mobile respectfully refers the Court to the Complaint and the Affidavits of Jason Campbell and Karen Crist for a full recitation of the facts, which are incorporated herein by reference.

Paragraphs 1(b) and 2 of the License Agreement expressly grant T-Mobile the right to use and access portions of the Property for "the installation, maintenance, repair and replacement of requisite wires cables, conduits and pipes [("Telecommunications Equipment")] for the installation, operation and maintenance of the Equipment." (Id., Ex. 1, ¶ 4). Paragraph 9(a) of the License Agreement adds that Licensee may complete all work necessary to prepare, maintain and alter the Property for operation of the Equipment. (Id., ¶ 9(a)). Further, the Agreement states at paragraph 9(d) that DCHA:

> shall provide to Licensee, Licensee's employees, agents, independent contractors
> and subcontractors access over the property to the Premises twenty four (24) hours
> a day, seven (7) days a week, at no charge to Licensee.

(Id., ¶ 9(d)).

After twelve years of failing to invoke this provision, DCHA recently asserted that paragraph 9(c) of the License Agreement requires a separate electric meter to measure the consumption of electricity used by the Telecommunications Equipment carrier, such that the Licensee will pay the utility directly therefor. (Compl., ¶ 24). Indeed, when T-Mobile took over the Property from its assignor-predecessor in December 1999, there was no electric meter in place and, until recently, DCHA never raised any concern with the lack of an electric meter or indicated that it was paying these electric charges. (Id., ¶ 25).

Notwithstanding the apparent waiver by DCHA of its rights under the License Agreement regarding an electric meter, T-Mobile proceeded in good faith when the issue was raised by DCHA and offered, by letter dated February 1, 2008, to install a new electric meter and pay certain amounts to DCHA to resolve the dispute. (Id., ¶ 27). T-Mobile also reminded DCHA of its obligation to not impede access to its equipment while the parties tried to resolve the issue regarding the electric charges, as DCHA had unreasonably been doing on the ground that monies

3

were due for such charges. (Id.). T-Mobile further stated that technicians would be on site to install the meter in two weeks. (Id.).

Although T-Mobile repeatedly has requested access to the property, DCHA continues to deny access to T-Mobile because of the unrelated monetary dispute. (Id., ¶ 30). Based upon hourly charges at other similar T-Mobile locations in the District of Columbia, T-Mobile offered to resolve the dispute by paying DCHA the sum of $23,512 for all past electric charges that might be due. (Id., ¶ 28; Aff. of Jason Campbell ("Campbell Aff."), ¶ 5). A check was tendered to DCHA, but DCHA returned the check and refused to accept payment. (Compl., ¶ 28; Campbell Aff., ¶ 5). Instead, DCHA demanded more than $140,000 for electric charges based upon comparisons with very different equipment, going back to 1995, when the License Agreement was first signed with T-Mobile's predecessor. (Compl., ¶¶ 28-29; Campbell Aff., ¶¶ 4, 6). However, under the Assignment Agreement with APC, the original licensee of the site, and the Consent to Assignment executed by DCHA in December 1999, it was agreed and acknowledged that T-Mobile would not be responsible for any charges prior to its assumption of the License Agreement. (Compl., Ex. 3; Campbell Aff., ¶ 6).

By letter dated February 15, 2008, T-Mobile notified DCHA, *inter alia,* that access was needed to maintain the Telecommunications Equipment and asserted that DCHA was in breach of the License Agreement by reason of DCHA's actions. (Compl., ¶ 31). DCHA did not provide a substantive response to this letter. On April 21, 2008, T-Mobile advised DCHA that two of its transmitters at the Property *are now malfunctioning*, which directly affects the wireless network, scope of coverage and the public's ability to communicate with 911 personnel in and around this site. (Aff. of Karen Crist ("Crist Aff."), Ex. 1). Specifically, T-Mobile technicians determined that as of this past weekend, one of three sectors at the Property *are now impaired*, thereby causing one-

4

third of all normal radio transmissions to be inoperative in and around this high volume (and 911 service) location. (Crist Aff., ¶ 4). The net effect of this impairment is that until T-Mobile is able to access the Property, a significant number of calls (including emergency calls) placed in and around the Property very likely will be dropped and/or disconnected. (Id.).

Indeed, the Property is situated in a location where there is substantial emergency 911 traffic. (Compl., ¶ 33; Campbell Aff. ¶ 8). Approximately 120 emergency calls each month are transmitted as a result of the Telecommunication Equipment at the site. (Compl. ¶ 33; Campbell Aff., ¶ 8). By virtue of the malfunction in the sector that recently has developed, 911 service is impaired, the exact degree to which is currently unknown. (Compl. ¶ 33; Campbell Aff., ¶ 8). By gaining access to the site, on the other hand, T-Mobile technicians can rectify, repair, and upgrade the Telecommunications Equipment and restore service to its optimum level for the safety of the public and the benefit of T-Mobile's customers. (Compl., ¶ 34).

## ARGUMENT

To demonstrate entitlement to a temporary restraining order or preliminary injunction, the moving party must establish: "(1) a substantial likelihood of success on the merits, (2) that [he] would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998); *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958). In this regard, district courts evaluate these four factors on a sliding scale, granting injunctions "[i]f the arguments for one factor are particularly strong . . . even if the arguments in the other areas are rather weak. An injunction may be justified, for example, where there is a particularly strong

5

likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). As discussed below, T-Mobile satisfies all four of the criteria.

**A.    There Is A Significant Likelihood That T-Mobile Will Be Successful On The Merits Of Its Claims.**

While a likelihood of success on the merits is required, the moving party need not show a certainty of success. As this Court previously noted, "plaintiff need not establish absolute certainty of success." *Rafeedie v. INS*, 688 F. Supp. 729, 741-42 (D.D.C. 1988), *aff'd in part and rev'd in part on other grounds*, 880 F.2d 506 (D.C. Cir. 1989). In fact, "it will ordinarily be enough that the plaintiff has raised serious legal questions going to the merits, so serious, substantial, difficult as to make them fair ground for litigation and thus for more deliberative investigation." *Id.* A preliminary injunction may issue, then, when the plaintiff demonstrates a likelihood of success on the merits.

Here, T-Mobile has a strong likelihood of success on the merits. "To prevail on a breach of contract claim, plaintiff[] must demonstrate that 'a contract existed, that plaintiff performed [its] contractual obligations, that defendant[s] breached the contract, and that plaintiff[] suffered damages due to the breach.'" *Greenwich Ins. Co. v. Ice Contrs., Inc.*, No. 04-695, 2008 U.S. Dist. LEXIS 25269, at *14 (D.D.C. Mar. 31, 2008). There is no dispute that DCHA consented to the assignment of the License Agreement to T-Mobile and, therefore, that a binding contract exists between the parties. The remaining elements are analyzed below.

First, T-Mobile performed its obligations under the Lease Agreement. The crux of DCHA's contention appears to be that T-Mobile has violated paragraph 9(c) of the License Agreement by failing to pay for its consumption of electricity based on a separate electric meter.

6

However, when T-Mobile took over access to the Property in December 1999, at which time the License Agreement had been in effect and full force for four years, there was no electric meter in place. In fact, for the next eight years, DCHA never once raised this issue, and the parties operated with all electricity costs being absorbed by DCHA. Even assuming, however, that DCHA's belated decision to enforce this aspect of the License Agreement after twelve years of failing to do so is proper, T-Mobile offered to comply with paragraph 9(c) and install an electric meter.

In addition, T-Mobile offered to pay certain amounts to resolve any dispute over past amounts allegedly due. Based upon hourly charges at three other locations that contain similar equipment and antenna configurations, T-Mobile offered to resolve the dispute by paying DCHA the sum of $23,512 for all past charges that might be due. A check was even tendered to DCHA, but DCHA refused to accept payment and, instead, demanded at one point more than $140,000. Upon information and belief, DCHA's demand, if it already has not been waived, is based on at least two erroneous assumptions: 1) DCHA is demanding that T-Mobile pay for electric charges going back to 1995 (when the License Agreement was first signed with T-Mobile's predecessor), even though the Consent to Assignment signed by DCHA in December 1999 states that T-Mobile would not be responsible for any charges prior to the assignment; and 2) the demand of $140,000 for estimated electricity consumed by T-Mobile is based on wholly different equipment used by other telecommunications carriers. Therefore, DCHA's demand is not legally supportable.

To the contrary, it is DCHA, and not T-Mobile, that has breached the License Agreement. Among other provisions, the License Agreement expressly grants T-Mobile the unconditional right to access the Property for "the installation, maintenance, repair and replacement of requisite

7

wires cables, conduits and pipes for the installation, operation and maintenance of the Equipment." DCHA cannot dispute that it has precluded T-Mobile from such access of the Property. This constitutes a clear violation of the License Agreement. In this regard, DCHA's actions are similar to those of a landlord that engages in self-help by changing locks on a residential tenant because payment for electric charges have not been made. Such unilateral action to impede access to real property is disfavored by the courts and, in fact, has been the ground for granting an injunction by District of Columbia courts. *See, e.g., Henson v. Prue*, 810 A.2d 912 (D.C. 2002) (district court granted temporary restraining order and permanent injunction enjoining landlord from changing locks and precluding entry to house).

As a result of DCHA's actions, T-Mobile cannot repair equipment that is malfunctioning and adversely affecting the immediate sector as required to transmit radio signals (nor can T-Mobile upgrade the equipment to meet new digital advances in cellular technology). DCHA's unilateral actions imperil the more than one hundred emergency 911 calls transmitted each month at this site and jeopardizes customer service and satisfaction. T-Mobile thus has suffered and will continue to suffer damages – monetary, in terms of customer satisfaction and the use of the Property for its Telecommunications Equipment.

For these reasons, T-Mobile has a strong likelihood of success on the merits. At the very least, T-Mobile "has raised serious legal questions going to the merits, so serious, substantial, difficult as to make them fair ground for litigation and thus for more deliberative investigation."

### B.  Without The Relief Sought Herein, T-Mobile Will Suffer Irreparable Harm.

T-Mobile's harm from DCHA's breach is both imminent and certain. By reason of DCHA's actions, T-Mobile is unable to gain access to its Telecommunications Equipment, *which is now malfunctioning.* This, in turn, diminishes the ability to transmit radio signals in and

8

around the site. As a result, until the equipment at the site is inspected and repaired, callers very likely will face dropped calls, interrupted transmissions, and, at times, the complete inability to connect to others (which includes, as set forth below, the inability of certain callers to make 911 calls). The longer that this malfunction continues, and particularly in this day of competitive telecommunications providers, T-Mobile will no doubt lose customers forever to competitors. Given the geographical range for which this particular site provides coverage, these losses may be significant. *See World Duty Free Americas, Inc. v. Summers*, 94 F. Supp. 2d 61, 67 (D.D.C. 2000) (finding irreparable harm where owners of duty-free shops alleged loss of some percentage of business that could not be recovered and some loss in customer goodwill).

Although outside this Circuit, the Supreme Court of New York, New York County, faced this very issue under similar facts. In *New York SMSA Ltd. P'ship v. 225 5th, LLC*, 803 N.Y.S. 2d 19 (N.Y. Sup. Ct. 2005), the plaintiff Verizon Wireless was a tenant that leased a portion of the roof at the premises. As here, the lease between Verizon and the building owner permitted Verizon to use the roof for maintenance of equipment, such as antennas for the transmission of wireless services. When the landlord threatened to cut Verizon's power cables and take acts inconsistent with Verizon's leasehold in order to proceed with its planned conversion of the premises to residential condominiums, Verizon sought a preliminary injunction. The Court found that plaintiff had demonstrated that it may be irreparably harmed in the absence of injunctive relief in the form of "loss of revenues" and the effect on "the provision of emergency wireless services to the public." Because irreparable harm was evident, Verizon was awarded a preliminary injunction restraining the landlord from interfering with its use and occupancy of the premises during the pendency of the action. *Id.*

9

Similarly, here, the Property is uniquely situated to provide wireless telephone service, including making 911 calls, to the customers of T-Mobile. Unless T-Mobile's operations are protected, and it is granted continued access to the Property, T-Mobile's ability to utilize this site to provide cellular phone service will be significantly impaired (as it is now), resulting in irreparable harm.

**C.    Granting The Relief Sought Herein Will Not Harm DCHA.**

In contrast to the harm that T-Mobile and the public face, DCHA will not suffer any measurable harm if a temporary restraining order and preliminary injunction are granted in this matter pending a trial on the merits. To the contrary, the trial will resolve what appears to be DCHA's primary concern – that T-Mobile install a meter and pay for the alleged amounts due for electricity consumption. An injunction simply would restore the status quo of the past twelve years where the parties complied with the terms of the License Agreement, including DCHA allowing T-Mobile unconditional access to its Telecommunications Equipment for the last eight years. *See Krause Int'l v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 588 (D.D.C. 1994) (quoting *Westinghouse Elec. Corp. v. Free Sewing Machine Co.*, 256 F.2d 806, 808 (7th Cir. 1958)) (noting that he traditional role of a temporary restraining order or preliminary injunction is to preserve the status quo pending the outcome of litigation, which is defined as "the last uncontested status which preceded the pending controversy"). This result is more than fair given that T-Mobile has offered to address the only issue raised by DCHA by installing an electric meter and paying for past amounts allegedly due.

**D.    Granting The Relief Sought Would Further Public Interest.**

As previously indicated, this site is situated in a location where there is substantial emergency 911 traffic. In fact, more than one hundred emergency calls each month are transmitted as a result of the Telecommunication Equipment at the site. By virtue of the malfunction in the sector that recently has developed, the ability of T-Mobile's customers to make 911 calls is impaired, the exact degree to which is currently unknown. Nor can one put a value on the level of harm to the public as a result of over 100 emergency calls each month potentially being missed. Granting a temporary restraining order and preliminary injunction so that T-Mobile can address the malfunction would curtail this harm to the public.

## CONCLUSION

For the foregoing reasons, this Court should enter a temporary restraining order enjoining DCHA, its agents, servants, and employees, and all other persons acting in concert with them, from taking any steps to interfere with T-Mobile's operations and access to the Telecommunications Equipment at the Property.

Dated: April 22, 2008                    Respectfully submitted,

Elizabeth Sarah Gere, D.C. Bar No. 186585
Prashant K. Khetan, D.C. Bar No. 477636
ROSS, DIXON & BELL, LLP
2001 K Street, NW
Washington, DC 20006-1040
Telephone: (202) 662-2000
Facsimile: (202) 662-2190

*Attorneys for Plaintiff*

367220

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

T-MOBILE NORTHEAST LLC, successor in interest
to OMNIPOINT COMMUNICATIONS CAP
OPERATIONS LLC,

                Plaintiff,

         vs.

DISTRICT OF COLUMBIA HOUSING
AUTHORITY,

                Defendant.

Case No. _____

## AFFIDAVIT OF JASON CAMPBELL IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

I, Jason Campbell, do hereby verify under penalty of perjury as follows:

1.  I am the Development Manager for the Washington, D.C. Market at T-Mobile USA, Inc., parent company of T-Mobile Northeast LLC, the successor in interest to Omnipoint Communications CAP Operations LLC ("T-Mobile "). I have personal knowledge of the matters set forth herein and am authorized by T-Mobile to submit this affidavit in this action.

2.  I make this affidavit in support of T-Mobile's motion for a temporary restraining order and a preliminary injunction to enjoin Defendant District of Columbia Housing Authority ("DCHA"), its agents and employees, and all other persons acting in concert with them, from in any manner interfering with or impeding T-Mobile's right to access, operate, upgrade and/or repair its Telecommunications Equipment, as required by the License Agreement entered into by and between T-Mobile's predecessors on August 17, 1995, at the property owned and/or controlled by DCHA at 1229 G Street, S.E., Washington, D.C. (See Compl., Ex. 1).

3.     As set forth in the Complaint, DCHA, as licensor, entered into the License Agreement with T-Mobile's predecessor in August 1995. By Consent Agreement dated December 13, 1999, DCHA consented to the assignment of the License Agreement to T-Mobile.

4.     Now, DCHA is improperly and unreasonably preventing T-Mobile from gaining access to the subject property because of a monetary dispute. Specifically, DCHA has complained about T-Mobile's presence at the property. Most recently, DCHA has insisted that monies are due under the parties' License Agreement for electrical charges dating back over a decade that should be absorbed and paid by T-Mobile. T-Mobile agrees that there is a dispute and that T-Mobile owes DCHA *some* monies. But T-Mobile disagrees on how much is due and for what period.

5.     We have evaluated the amount due in good faith based upon 14 invoices from three other sites in the District of Columbia involving similar equipment. Averaging the amount of electric usage in KW hours, going back to late 1999 when T-Mobile acquired the site with DCHA's consent, T-Mobile determined that $23,512 was a fair and reasonable amount to resolve the dispute for all electric charges. T-Mobile tendered payment for that amount, but DCHA unreasonably refused to accept it.

6.     Instead, DCHA has taken the untenable position that more than $140,000 is past due, based on dissimilar equipment owned by another carrier (Sprint) (which equipment has no connection to T-Mobile), and that T-Mobile owes for charges dating back to 1995. That demand has been made even though the DCHA's consent to the assignment of the license to T-Mobile absolves T-Mobile of any liability prior to the assignment in December 1999.

2

7.    T-Mobile respectfully submits that, regardless of DCHA's position that monies are past due or DCHA's breach of the agreement, DCHA has no valid right to ignore the License Agreement, impede access to the site simply because there is a dispute over monies due, and place members of the public at large, many of whom rely on T-Mobile's Telecommunications Equipment for wireless communications and to quickly transmit signals for all emergency 911 calls, at grave peril by obstructing and denying T-Mobile's access to its equipment.

8.    This matter is an emergency because part of T-Mobile's telecommunications equipment at DCHA's property has been damaged and/or is now inoperable, disrupting the ability of a sector to transmit radio signals.  The site in question at DCHA's property is responsible for transmission of roughly 120 calls each month for just emergency 911 calls (separate from the thousands of calls made to and from T-Mobile's customers).  As a result, until the equipment at the site is inspected and repaired, 911 callers face the danger of potential dropped calls, interrupted transmissions, or complete inability to connect to emergency personnel due to DCHA's refusal to grant T-Mobile access to its equipment.

9.    DCHA's refusal to give T-Mobile access to its equipment as demanded jeopardizes not only customer satisfaction, but the public at large in an emergency situation.

10.    In an effort to coerce greater monies, DCHA refuses to give T-Mobile access to its equipment.  Injunctive relief is urgently needed.  Without it, DCHA will continue to prevent T-Mobile from inspecting, repairing and upgrading its equipment as necessary to restore cellular communications in the area to full capacity.

3

11.     DCHA's actions violate the express terms of the parties' License Agreement, which requires, among other things, that DCHA provide T-Mobile with access to its equipment, *24 hours a day, 7 days a week*. A temporary restraining order and preliminary injunction are imperative to maintain the *status quo* and protect T-Mobile 's equipment, customers, and the public at large.

12.     No previous application for the relief sought herein has been made.

4

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON APRIL 1ᵗʰ, 2008.

Jason Campbell

367149 v 1

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| T-MOBILE NORTHEAST LLC, successor by merger to OMNIPOINT COMMUNICATIONS CAP OPERATIONS LLC, | Case No._____ |
| Plaintiff, | |
| vs. | |
| DISTRICT OF COLUMBIA HOUSING AUTHORITY, | |
| Defendant. | |

### DECLARATION OF KAREN CRIST, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

I, Karen Crist, being of full age and duly sworn upon my oath hereby depose and say as follows:

1.    I am an attorney-at-law and corporate counsel for T-Mobile USA, Inc. ("T-Mobile"), parent company of T-Mobile Northeast LLC, plaintiff in the above-captioned action. I have personal knowledge of the matters set forth herein.

2.    I respectfully submit this declaration in support of T-Mobile's motion for a temporary restraining order and a preliminary injunction to enjoin Defendant District of Columbia Housing Authority ("DCHA"), its agents and employees, and all other persons acting in concert with them, from in any manner interfering with or impeding T-Mobile's right to access, operate, upgrade and/or repair its Telecommunications Equipment, as required by the License Agreement entered into by and between T-Mobile's predecessors on August 17, 1995, at

1199980

the property owned and/or controlled by DCHA at 1229 G Street, S.E., Washington, D.C. (See Compl., Ex. 1).

3    In connection with this ongoing dispute with DCHA, we have been regularly communicating with DCHA to implore it to give us access to the site. We have been waiting in the hope that DCHA would come around and grant access. We feared that DCHA's blocking of access to our equipment would soon escalate into a situation that would place our wireless network at risk, which would adversely affect wireless service to the public, including emergency service personnel. This past weekend, April 19-20, our fears were realized.

4    Our technicians have determined that, as of this past weekend, one of the three sectors at the site in question is now impaired, thereby causing one-third of all normal radio transmissions to be inoperative in and around this high volume emergency 911-service location. This means that dropped calls and disconnections are likely in and around the site. In order to restore normal transmissions in and around this vicinity, access to our equipment is urgently needed on the rooftop, and the basement of, DCHA's property.

5    In all of its agreements with landowners and municipalities that lease or license to T-Mobile the right to have unrestricted access to property is paramount, therefore we provide that, as part of such agreements, access is to be given at all times. This is crucial, because when equipment is damaged, malfunctions, or becomes impaired for any reason, we quickly dispatch technicians to the site to immediately repair the equipment or connections. T-Mobile maintains emergency systems and alarms to alert us as soon as any system or equipment malfunctions.

6    This past weekend, we received alerts that, at the DCHA's property, two transmitters are now malfunctioning. This is restricting the radio transmissions in and around the

site. Repairs can only be made by physically going to the site and inspecting the T-1 lines, cables, transmitters, antennae, and connections.

7       By letter dated April 21, 2008, I notified DCHA of the emergent situation and that we needed access immediately at the site. A true and correct copy of that letter, sent by federal express priority overnight delivery, is attached hereto as Ex. 1. As of now, DCHA refuses to give access, necessitating court intervention.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON APRIL 22, 2008.

KAREN CRIST

1199980

EXHIBIT 1

# T· ·Mobile· · ·

4 Sylvan Way, Parsippany, NJ 07054
Telephone: (973) 292-8989
Attn: Legal Department

April 21, 2008

Leslie T. Jackson, Esq.
Senior Counsel
District of Columbia Housing Authority
1170 12th Street, N.W., Suite 319
Washington, D.C. 20005

Re:                    License Agreement dated August 17, 1995 (the "License") by and between the
                       District of Columbia Housing Authority ("Licensor/DCHA") and T-Mobile
                       Northeast LLC ("Licensee/T-Mobile") successor in interest to American PCS,
                       L.P., pursuant to that certain Consent to Assignment signed and dated December
                       13, 1999 by Licensor.
Site Number:           7-WDC-020 ("Site")
Site Address:          1229 G. Street, S.E., Washington, D.C. (Property)

Dear Ms. Jackson:

   T-Mobile is demanding, consistent with its rights under the parties' License Agreement, immediate access
to the above-referenced Property in order to repair its equipment. As you know we have been demanding access
for some time and your office has been purposefully holding us up because of a money dispute. We are now
advised by our technicians that, as we feared, two transmitters are now malfunctioning as of this weekend, which
in turn is directly impacting our wireless network, the scope of coverage, and the public's ability to communicate
with 911 emergency personnel in and around this site.   It is imperative that you allow T-Mobile to access the
Property immediately.

   Please contact the undersigned by 12:00 PM Tuesday, April 22, 2008, to advise me whether we will be
granted access so that I can advise our technicians that they can repair the equipment forthwith. If I do not receive
such notice from you by noon tomorrow, we will be compelled to pursue all legal and equitable remedies available.

   I can be reached the above telephone number or email at karen.crist@T-Mobile.com.

Sincerely,

Karen A. Crist
Corporate Counsel

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| T-MOBILE NORTHEAST LLC, successor in interest to OMNIPOINT COMMUNICATIONS CAP OPERATIONS LLC,<br><br>        Plaintiff,<br><br>      vs.<br><br>DISTRICT OF COLUMBIA HOUSING AUTHORITY,<br><br>        Defendant. | Case No. _____ |

## ORDER

Upon consideration of Plaintiff's Motion for a Temporary Restraining Order and a

Preliminary Injunction, and any opposition thereto, it is this _____ day of _____,

2008, hereby

ORDERED that Plaintiff's Motion for a Temporary Restraining Order and a Preliminary

Injunction should be and hereby is GRANTED;

FURTHER ORDERED that Defendant grant Plaintiff immediate access to property

located at 1229 G Street, S.E., Washington D.C. for purposes of inspecting, repairing,

maintaining and upgrading its telecommunications equipment; and

FURTHER ORDERED, in accordance with Fed. R. Civ. P. 65(c), that this Order shall be

effective upon Plaintiff's posting with the Clerk of Court $100 in cash, or a surety bond in such

amount.

Dated: _____, 2008


                                        _____

                                        United States District Judge