UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| T-Mobile Northeast, LLC, successor in Interest to Omnipoint Communications Cap Operations LLC, | ) ) ) |
| | ) ) |
| V. | ) |
| | ) Civil Action No. 1:08-cv-00689 |
| | ) Hon. Rosemary M. Collyer |
| | ) |
| DISTRICT OF COLUMBIA HOUSING AUTHORITY 1133 N. Capitol St., N.E., Washington, D.C. 20002 | ) ) ) ) |
| | ) ) |
| Defendant | ) ) |

ANSWER AND COUNTERCLAIM
OF DEFENDANT DISTRICT OF COLUMBIA
HOUSING AUTHORITY

Defendant, District of Columbia Housing Authority ("DCHA"), by its attorney,

Hans Froelicher answers Plaintiff's complaint and states the following:

FIRST DEFENSE

DCHA responds to each of the allegations in Plaintiff's Complaint as follows:

1. DCHA admits

2. DCHA admits

3. DCHA admits the allegation in paragraph 3 insofar that DCHA consented to

   the assignment. DCHA alleges that its consent was vitiated by fraud

4. DCHA admits to the contents of the License Agreement.

1

5. DCHA admits and further responds that the License Agreement requires T-Mobile to pay for its electric charges through a separate account with the local utility provider.

6. DCHA admits to the allegation in paragraph 6 insofar as it informed T-Mobile of its obligation to pay for electrical consumption. DCHA denies the remaining allegations.

7. The allegations in paragraph 7 are conclusions of law or argument of counsel to which no response is required. To the extent that a response is required, DCHA has insufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 7 and demands strict proof thereof.

8. DCHA admits to the existence of a dispute about the amount of sums owed.

9. DCHA has insufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 9 and demands strict proof thereof.

10. DCHA has insufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 10 and demands strict proof thereof.

11. No response by DCHA is required.

12. DCHA has insufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 12 and demands strict proof thereof.

13. DCHA denies the allegation contained within paragraph 13. DCHA further responds that DCHA is an independent authority of the District government with the responsibility for operating public housing in the District of Columbia per D.C. Code §6-201 (2001 edition), et. seq.,

14. The allegations in paragraph 14 are conclusions of law or argument of counsel to which no response is required.  To the extent that a response is required, DCHA denies that diversity of jurisdiction exists.

15. DCHA admits.

16. DCHA admits.

17. DCHA admits.

18. DCHA admits.

19. DCHA admits.

20. DCHA denies the allegation contained within paragraph 20.

21. DCHA has insufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 21 and demands strict proof thereof.

22. DCHA has insufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 22 and demands strict proof thereof.

23. DCHA has insufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 23 and demands strict proof thereof.

24. DCHA admits insofar as the License Agreement required separate electrical metering and direct utility payment by the Licensee.

25. DCHA has insufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 23 and demands strict proof thereof.

26. DCHA denies insofar that it has not waived any rights under the License, and further alleges that it did not learn of the absence of a working electrical meter and that DCHA was being charged for the electrical consumption in connection with the antennae prior to November 28, 2007.

27. DCHA denies the allegation contained within paragraph 27.

28. DCHA admits, but further responds that the settlement offer was not made in good faith.

29. DCHA admits.

30. DCHA denies the allegation contained within paragraph 30.

31. DCHA admits insofar the letter was received

32. The allegations in paragraph 32 are conclusions of law or argument of counsel to which no response is required. To the extent that a response is required, DCHA has insufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 32 and demands strict proof thereof.

33. The allegations in paragraph 33 are conclusions of law or argument of counsel to which no response is required. To the extent that a response is required, DCHA has insufficient knowledge or information to form a

belief as to the truth or falsity of the allegations in paragraph 33 and demands strict proof thereof.

34.    The allegations in paragraph 34 are conclusions of law or argument of counsel to which no response is required.  To the extent that a response is required, DCHA has insufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 34 and demands strict proof thereof.

35.    The allegations in paragraph 35 are conclusions of law or argument of counsel to which no response is required.  To the extent that a response is required, DCHA has insufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 35 and demands strict proof thereof.

36.    The allegations in paragraph 36 are conclusions of law or argument of counsel to which no response is required.  To the extent that a response is required, DCHA denies the allegation in paragraph 36.

37.    The allegations in paragraph 37 are conclusions of law or argument of counsel to which no response is required.  To the extent that a response is required, DCHA has insufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 37 and demands strict proof thereof.

38.    DCHA incorporates herein all of its aforementioned responses.

39.    DCHA admits

40. The allegations in paragraph 40 are conclusions of law or argument of counsel to which no response is required. To the extent that a response is required, DCHA denies the allegation in paragraph 40.

41. The allegations in paragraph 41 are conclusions of law or argument of counsel to which no response is required. To the extent that a response is required, DCHA denies the allegation in paragraph 41.

42. The allegations in paragraph 42 are conclusions of law or argument of counsel to which no response is required. To the extent that a response is required, DCHA denies the allegation in paragraph 42.

43. DCHA incorporates herein all of its aforementioned responses.

44. DCHA has insufficient knowledge or information to form a belief as to the truth or falsity of the allegations in paragraph 44 and demands strict proof thereof.

45. DCHA denies the allegation in paragraph 45.

46. DCHA admits that a controversy exists between the parties.

47. No response from DCHA is required.

## SECOND DEFENSE

Plaintiff has failed to state a claim upon which relief can be granted and to plead sufficient facts to establish liability against DCHA.

## THIRD DEFENSE

DCHA alleges that T-Mobile, knowingly and fraudulently accessed DCHA electrical service from the Potomac Gardens site in violation of the License Agreement and the assignment dated December 29, 1999. DCHA had no knowledge that Omnipoint and T-

6

Mobile had both failed to install electrical meters and to establish utility their own accounts with the PEPCO.

## FOURTH DEFENSE

DCHA denies any averments of violations of the law not specifically admitted herein.

## FIFTH DEFENSE

DCHA denies all averments of fact not specifically admitted herein.

WHEREFORE DCHA prays this court dismiss Plaintiff's Complaint with prejudice and grant DCHA such other relief as may be due or as justice may require.

## COUNTERCLAIM

### for

## FRAUD, MISREPRESENTATION, CONVERSION and BREACH OF CONTRACT

48. DCHA in accordance with Rule 13(a) brings this Counterclaim for Fraud, Misrepresentation, Conversion and Breach of Contract as its claims arise from the same contracts and facts that give rise to the Plaintiff's Complaint.

### Parties

49. The Counter Plaintiff / Defendant, D.C. Housing Authority (hereafter DCHA) is an independent authority of the District of Columbia. The Authority was established to govern public housing and to implement the Housing Act of 1937 in the District and to be responsible for providing decent, safe, and sanitary dwellings, and related facilities, for persons and families of low and moderate-income. See, D.C. Code, 2001 Ed. §6-202. The D.C. Housing Authority administers both the low income public housing program and the Housing Choice Voucher Program (HCVP) on behalf of, and funded by the Dept.

7

of Housing and Urban Development.  DCHA receives funding from the United States
government to operate said programs.

50.    The Counter Defendant/ Plaintiff, T-Mobile Northeast LLC, successor in
Interest to Omnipoint Communications CAP Operations LLC, (hereinafter referred to as
"T-Mobile") registered its corporation in the District of Columbia and does business in
the District of Columbia.

**Facts common to all counts**

51.    DCHA is the owner of the property commonly known as Potomac
Gardens located at 1229 G Street, S.E. in the District of Columbia (hereinafter it may be
referred to as the "subject premises").

52.    On August 17, 1995, the DCHA entered into a License Agreement with
American PCS, L.P. ("American") for placement of certain antenna and other specified
telecommunication equipment onto its roof at the subject premises (hereinafter referred to
as "License Agreement").  *See* License Agreement as Exhibit One of Plaintiff/Counter
Defendant's Complaint ("Exh. 1").

53.    Section 9 (c) of the License Agreement states: "At Licensee's sole cost
and expense, Licensee shall have a separate electric meter installed to measure the
electric consumption of its Equipment and Licensee shall contract with and pay directly
to the public utility company for the installation of the electric meter and for any
electricity consumed by its Equipment."

54.    Section 17 of the License Agreement required American to provide notice
to DCHA of any assignment.  On December 13, 1999, American provided notice by way
of a consent to assign to DCHA of its assignment to Omnipoint Communication Cap

Operations, LLC (hereinafter referred to as "Omnipoint"), d/b/a and successor in interest

to T-Mobile ("Consent to Assign").   DCHA consented to the assignment; however,

DCHA never received the consideration articulated in the assignment agreement.  *See*

Exh. 3 of Plaintiff/Counter Defendant's Complaint.

55.    The Consent to Assignment stated that DCHA agreed to be bound by the

Consent to Assignment for valuable consideration that DCHA has never received. Further

the Consent to Assignment refers to a "lease" between American and DCHA. There was

never a lease between American and DCHA, only a license agreement.

56.    American and T-Mobile entered into an Assignment and Assumption

Agreement between them dated December 28, 1999.  In Section 7 of the Assignment and

Assumption Agreement Omnipoint/T- Mobile was required to pay separately to a utility

company or to American its electrical consumption at the subject premises.  Specifically

T-Mobile was required to "use commercially reasonable efforts to obtain and have

installed separate electrical, telephone and other utility systems and service for the

Premises directly from the servicing utility company within twelve (12) months after the

date of this Assignment."  Exh. 2 of Plaintiff/Counter Defendant's Complaint.  The

Agreement references a definitive date of March 30, 2000 upon which T-Mobile had to

install its own meter and pay directly to a utility company for usage.

57.    American, Omnipoint and T-Mobile installed what appears to be operating

meters at the subject premises.  At all times DCHA believed the meters complied with the

License Agreement and American's and T-Mobile's assignment agreement.  Pursuant to

the License Agreement DCHA believed the meters were wired separately and that they

accurately measured the American's and T-Mobile's electrical consumption for its

9

Equipment and believed that American and T-Mobile paid for such consumption directly to a public utility company for all electricity consumed by their Equipment.

58.    In March 2007, DCHA reviewed T-Mobile's Equipment and meters at the subject premises.  DCHA still believed the electrical meters were completely separate and that the electrical consumption was being paid directly to the appropriate local utility company.

59.    During the summer of 2007, DCHA received information that T-Mobile may be secreting its electricity.  To investigate the information received, DCHA conducted an electrical review of T-Mobile equipment on the subject premises during the summer of 2007.  DCHA discovered that T-Mobile's meter was wired into DCHA's Pepco electrical meter for the entire property.

60.    On or about November 19, 2007, when DCHA questioned what it then believed to be an illegal tap into its electricity T-Mobile, informed DCHA that T-Mobile had paid for its electricity and provided a Pepco account number and meter number.

61.    Pepco informed DCHA that the account and meter numbers provided by T-Mobile were not valid Pepco account and meter numbers and confirmed that Pepco had no record of T-Mobile ever paying for any electricity at the subject premises.

62.    The T-Mobile meter was not separately metered and had never been separately metered.

63.    T-Mobile later admitted that it had in fact tapped into DCHA's electricity and used DCHA electricity without authorization and payment.  T-Mobile admitted it had installed a sub-meter wired into DCHA's Pepco electrical meter.

10

64.    DCHA informed T-Mobile that T-Mobile conduct was willful, intentional, deceitful and informed T-Mobile that it is in breach of its License Agreement and committed fraud and conversion of government property.

65.    DCHA was not able to determine the illegal tap from its electrical bill because the subject premises is a government owned residential public housing apartment building.  DCHA receives one collective utility bill for numerous properties that it owns including the subject premises which made it extremely difficult for it to discover the illegal tap based on fluctuation of bill.

66.    When DCHA signed the December 1999 American/T-Mobile Consent to Assignment it was the only entity completely unaware that American and T-Mobile were illegally and deceitfully secreting DCHA's electricity and that they had intentionally, fraudulently and deceitfully induced DCHA into executed the Consent to Assignment. Nothing in the Consent to Assignment required DCHA to pay T-Mobile's electricity usage at the subject premises.

67.    Unfortunately, DCHA trusted T-Mobile and provided unlimited and unescorted access to the subject premises during and after the construction of the telecommunication equipment.

68.    DCHA demanded payment for T-Mobile's breach of contract and intentional, unauthorized, illegal and converted use of its electricity beginning from the date of execution of the License Agreement through the date T-Mobile complies with the License Agreement.  DCHA also informed T-Mobile that it was in breach of its License Agreement.

11

69.    T-Mobile attempted to make restitution to DCHA by creating an artificial electrical consumption usage that does not adequately reflect its actual electrical usage without offering the proof required to substantiate.

70.    T- Mobile continues to be in breach of its contract by not paying for its electrical use and has not paid directly to a utility company or to DCHA for any electrical usage.

71.    DCHA has attempted for months to get T-Mobile to pay for its fraudulent use of its electricity.

72.    In an effort to amicably resolve the matter, DCHA requested that T-Mobile provide comparable utility bills from other similarly situated equipment.  In addition DCHA requested construction drawings for the comparable utility bills so that DCHA could determine whether the bills are truly comparable.

73.    In lieu of providing the construction drawings, T-Mobile instead sent DCHA a check as an offer to settle.  However, the amount of the check poorly reflected the fraudulent usage of electricity from the date of illegal and deceitful use to present.

74.    T-Mobile refused to provide construction drawings when construction drawings are required by the District of Columbia for placement of all antennas and other telecommunication equipment on property in D.C.

### COUNT ONE

(Breach of Contract)

75. DCHA repeats each and every allegation aforementioned as if set forth herein.

76. DCHA entered into a binding license agreement with T-Mobile as the successor in interest to American.

77. That agreement requires T-Mobile to install its own electric meter and purchase its own electrical power directly from Pepco.

78. T-Mobile and its predecessors failed to install the meter and have used DCHA's electrical power to operate their equipment.

79. By reason of the foregoing, DCHA has been damaged and is entitled to an amount to be determined at trial for the value of the electrical power used.

## COUNT TWO

(Conversion)

80. DCHA repeats each and every allegation aforementioned as if set forth herein.

81. By failing to install its own meter T-Mobile converted DCHA's electrical power to its own use to operate its Equipment without DCHA's permission or knowledge.

82. By reason of the foregoing, DCHA has been damaged and is entitled to an amount to be determined at trial for the value of the electrical power used.

## COUNT THREE

(Fraud)

83. DCHA repeats each and every allegation aforementioned as if set forth herein.

84. T-Mobile and its predecessor in interest knew at the time they installed the non-working meter it would not separately measure the electrical power used by T-Mobile or its predecessor to operate the Equipment. They did so with the intent to avoid paying for the electrical power.

85.  T-Mobile and its predecessor knew they have not been billed for the electric power nor have they paid for the same.

86.  When T-Mobile informed DCHA it had a Pepco meter and account in its name for the Equipment on the property it knew those statements were false and intended to conceal the fact it was using and not paying for DCHA's electrical power.

87.  DCHA relied on these representations to its detriment as DCHA has continued to pay for the electrical power used by T-Mobile.

88.  By reason of the foregoing, DCHA has been damaged and is entitled to an amount to be determined at trial for the value of the electrical power used.

89. Punitive damages are appropriate and necessary to prevent a large telecommunications company from such fraudulent practices with property owners with whom it obtains valuable access to property to install Equipment.

### COUNT FOUR

#### (Misrepresentation)

90. DCHA repeats each and every allegation aforementioned as if set forth herein.

91.  T-Mobile and its predecessor in interest knew at the time they installed the non-working meter it would not separately measure the electrical power used by T-Mobile or its predecessor to operate the Equipment.  They knew they had an obligation to install a meter from Pepco and pay for the power.

92.  T-Mobile and its predecessor knew they have not been billed for the electric power nor have they paid for the same.

93. When T-Mobile informed DCHA it had a Pepco meter and account in its name for the Equipment on the property it knew DCHA would rely on that representation that the provisions of the license agreement was complied with.

94. DCHA relied on these representations to its detriment as DCHA has continued to pay for the electrical power used by T-Mobile.

95. By reason of the foregoing, DCHA has been damaged and is entitled to an amount to be determined at trial for the value of the electrical power used.

<b>Relief sought</b>

Wherefore, the District of Columbia Housing Authority demands:

1.    Judgment against T-Mobile, Inc;

2.    Compensation for illegal and fraudulent use of electricity;

3.    Interest on the value of the electrical power;

4.    Punitive damages;

5.    And such other relief as the court shall deem appropriate.

Respectfully submitted,

Hans Froelicher, Bar #475506
Acting General Counsel
District of Columbia Housing Authority
1133 North Capitol St., NE
Suite 210
Washington, DC 20002
(202) 535-2835

*Counsel for District of Columbia Housing Authority*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Defendant District of Columbia Housing Authority's Answer was served this 12th day of May, 2008, electronically and via first class mail, postage prepaid, to:

Elizabeth Sarah Gere, Esq.
Prashant K. Khetan, Esq.
Ross, Dixon & Bell, LLP
2001 K Street, NW
Washington, D.C. 20006-1040
*Attorneys for Plaintiff*

_____
Hans Froelicher

16